**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**ST. LOUIS DIVISON**

| | | |
|---|---|---|
| **BONITA ALEXIS DEAN,** | ) | |
| | ) | **COMPLAINT** |
| **Plaintiff,** | ) | |
| | ) | **Case Number:** 4:26-cv-1314 |
| **v.** | ) | |
| | ) | |
| **PHELPS COUNTY BANK** | ) | **JURY TRIAL DEMAND** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>COMPLAINT FOR DAMAGES</u>

COMES NOW, Bonita Alexis Dean, ("Plaintiff"), by and through undersigned counsel, and for her Complaint for Damages against Defendant Phelps Conty Bank ("Defendant"), pursuant to 29 U.S.C. § 2601 et seq., the Family Medical Leave Act ("FMLA"), 42 U.S.C. § 12101, et seq, the Americans with Disabilities Act, ("ADA"), and Mo. Rev. Stat. § 213.010, et seq., Missouri Human Rights Act, ("MHRA"), and hereby states as follows:

## <u>PARTIES</u>

1. Plaintiff is a natural person who, at all times relevant herein, was domiciled in the State of Missouri.

2. Defendant is a Missouri incorporated business entity with its principal place of business within the state located at 718 N. Pine Street, Rolla, Missouri 65401-3138.

3. Defendant operates in the State of Missouri with its registered agent within the state listed as Dominic DeLuca, 718 N. Pine Street, Rolla, Missouri 65401-3138.

4. Defendant employees an excess of fifty (50) employees.

## JURIDISCTION AND VENUE

5. This court has jurisdiction over all federal claims pursuant to 28 U.S.C. § 1331.

6. Jurisdiction is additionally granted under § 12117 and § 2617(a)(2).

7. Additionally, as Plaintiff's claims under state law arise out of the same transaction and occurrence as the claims under federal law, these claims are so related to form the same case or controversy, and the Court therefore has supplemental jurisdiction of these state claims pursuant to § 1367.

8. Under § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

9. For all times relevant, Defendant employed Plaintiff in Rolla, Missouri.

10. Defendant engaged in business and employed individuals within this District, and such actions directly relate and caused the claims as outlined in this Complaint, showing Defendant has sufficient minimum contacts within the state.

11. Venue is proper because the acts and transactions occurred here, Plaintiff resides here, and Defendant transacts business here.

## ADMINISTRATIVE PROCEDURES

12. On or about January 19, 2026, Plaintiff timely filed with the EEOC and MCHR a Charge of Discrimination (the "Charge") alleging violations by Defendant of the ADA and MHRA in discriminating against Plaintiff because of her disability, failing to accommodate her disability, and retaliating against Plaintiff for her disability and for her pursuit of reasonable accommodation for said disability.

13. The aforementioned Charge provided the EEOC and MCHR sufficient opportunity to investigate the full scope of the controversy between Plaintiff and Defendant, and accordingly, the sweep of this action is within the broad scope that could reasonably be expected to have grown out of the Charge.

14. On July 31, 2026, the Equal Employment Opportunity Commission (the "EEOC") issued to Plaintiff a letter indicating her right to bring a civil action against Defendant within ninety (90) days of such notice related to the claims over which the EEOC has jurisdiction (the "Notice of Right to Sue").

15. The claims under the ADA are hereby commenced within ninety (90) days of the EEOC's issuance of Plaintiff's Notice of Right to Sue indicating her right to bring a civil action against Defendant within ninety (90) days of such notice.

16. On August 4, 2026, the Missouri Commission on Human Rights (the "MCHR") issued to Plaintiff a letter indicating her right to bring a civil action under the MHRA against Defendant within ninety (90) days of such notice related to the claims over which the MCHR has jurisdiction.

17. The claims under the MCHR are hereby commenced within ninety (90) days of the MCHR's issuance of Plaintiff's Notice of Right to Sue indicating her right to bring a civil action

18. All of Plaintiff's allegations regarding Defendant's willful violations of FMLA are brought within three (3) years of the date of this Complaint.

19. All of Plaintiff's allegations regarding Defendant's negligent violations of FMLA are brought within (2) years of the date of this Complaint.

20. Thus, Plaintiff has satisfied all private, administrative, and judicial prerequisites to the commencement of this action, which is hereby timely filed within all applicable statutes of limitations.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

21. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

22. Plaintiff suffers from Celiac Disease and Thyroid Toxicosis.

23. Plaintiff's Celiac Disease and Thyroid Toxicosis substantially limit one or more of her major life activities, including her immune and gastrointestinal systems.

24. Plaintiff's Celiac Disease and Thyroid Toxicosis cause symptoms including abdominal pain, fatigue, diarrhea, weight loss, headaches, anemia, rapid heart rate, and heat sensitivity.

25. Plaintiff has suffered from Celiacs Disease and Thyroid Toxicosis for years and will continue to have these disorders for the remainder of her life.

26. Plaintiff thus has a disability consisting of her Celiacs Disease and Thyroid Toxicosis ("the disability").

27. Plaintiff was employed by Defendant starting on or about January 2024.

28. For all times relevant herein, Plaintiff was employed by Defendant at its Rolla, Missouri location.

29. For all times relevant herein, Defendant had at least fifty (50) employees employed within seventy-five (75) miles of the Rolla, Missouri location where Plaintiff worked.

30. For all times relevant herein, Plaintiff was a full-time employee of Defendant.

31. Plaintiff began working for Defendant in the Teller position.

32. Plaintiff became a Call Center Specialist for Defendant on or about June 2025 and remained in that position until her termination.

33. During Plaintiff's employment, she was able to perform the essential functions of her job with or without reasonable accommodation.

34. On or about September 16, 2025, Plaintiff was hospitalized for her disability.

35. Upon discharge from the hospital, Plaintiff requested the ability to use intermittent FMLA leave as a reasonable accommodation for her disability.

36. At the time of her request, Plaintiff had worked for Defendant for more than twelve months and exceeded 1,250 hours of work for Defendant in the preceding twelve months.

37. Plaintiff provided all necessary paperwork and documentation to certify her medical need for intermittent FMLA leave.

38. After being approved for intermittent FMLA leave, Plaintiff used her leave as needed when feeling severe symptoms.

39. At the instruction of Defendant, Plaintiff additionally used FMLA leave when her symptoms of the disability included a fever or vomiting, as Defendant considered Plaintiff to be a health and safety concern when exhibiting these symptoms at work.

40. At no time did Plaintiff use her intermittent FMLA leave for any purpose other than due to her symptoms of her disability or for medical appointments and treatment relating to her disability.

41. On or about December 9, 2025, Plaintiff met with her medical provider, who agreed that allowing Plaintiff to work form home would be another suitable, alternative reasonable accommodation for Plaintiff.

42. Plaintiff's medical provider provided Plaintiff with a letter detailing her doctor's recommendation, which Plaintiff passed along to Defendant.

43. Plaintiff, at the advice of her medical provider, was requesting to work from home only a few days a month as needed for flare ups of her disability.

44. At that point in time, several of Plaintiff's non-disabled co-workers were given permission to work from home.

45. Despite allowing non-disabled individuals to work from home, Defendant refused to allow Plaintiff to work from home and advised it would only discuss this as an option once Plaintiff had exhausted her FMLA leave.

46. No other non-disabled employees or employees not using FMLA leave were required to exhaust all possible leave time before being allowed to work from home.

47. Plaintiff then required the use of FMLA on December 15, 16, and 17, 2025, during a flare up of her disability that caused, among other symptoms, a fever, a rapid heart rate that resulted in excessive sweating, nausea, vomiting, and diarrhea.

48. When Plaintiff returned on December 19, 2025, Plaintiff was ordered to attend a meeting with Defendant.

49. Defendant advised Plaintiff that it had been monitoring Plaintiff's debit card usage for the past several months without her permission or approval.

50. Defendant began monitoring Plaintiff's debit card usage because of Plaintiff's use of intermittent FMLA leave.

51. Defendant determined that because Plaintiff's debit card included purchases from fast food restaurants during days she was using her intermittent FMLA leave, which it deemed was outside of her food restrictions, she must be lying about her disability.

52. Defendant then terminated Plaintiff for her absences under her intermittent FMLA leave.

53. No other non-disabled employees or employees that were not using FMLA leave were subject to such intense – and illegal – scrutinization of their personal purchases.

54. No other non-disabled employees or employees that were not using FMLA leave were subjected to Defendant's determination as to what food employees should eat.

55. Defendant did not even offer Plaintiff the opportunity to explain the purchases.

56. Even if Plaintiff had been eating food that Defendant believed to be inappropriate for her disability, it is blatantly discriminatory to dictate the limits of Plaintiff's abilities – including the limits of what food she may ingest.

57. Defendant's reason for termination was clearly discriminatory.

58. Defendant's reason for termination was in retaliation for Plaintiff's use of her intermittent FMLA leave.

59. No similarly situated non-disabled individual or individuals not using FMLA leave were subjected to similar actions by Defendant.

60. Plaintiff was qualified and capable of continuing her duties in her employment.

61. Defendant was blatant in its distain for Plaintiff's use of intermittent FMLA leave.

62. Defendant's alleged reasons for Plaintiff's termination are clearly pretextual to the extent Defendant claims the reasons are neutral.

63. Defendant began a months long campaign against Plaintiff wherein it monitored her personal debit card usage specifically on each day she was using her intermittent FMLA leave.

64. Defendant clearly terminated Plaintiff for the time she took off due to her intermittent FMLA leave that she was legally entitled to.

65. Plaintiff would not have been terminated had she not disclosed her disability.

66. Plaintiff would not have been terminated had she not requested an accommodation for her disability.

67. Plaintiff would not have been terminated had she not requested the use of intermittent FMLA leave.

68. Plaintiff would not have been terminated had she not utilized her intermittent FMLA leave.

69. Defendant refused to provide accommodation to Plaintiff even though the accommodation did not place an undue burden on Defendant.

70. Defendant retaliated against Plaintiff for engaging in the protected activities of seeking accommodation for her disability and for complaining of disability discrimination

71. No legitimate, non-discriminatory or non-retaliatory reason existed to terminate Plaintiff.

72. Defendant terminated Plaintiff solely because she was disabled, requested accommodations, and sought and used FMLA leave.

73. As a direct and proximate result of Defendant's actions Plaintiff suffered, continues to suffer, and will in the future suffer, damages including, but not limited to, lost wages, lost opportunity to earn wages, lost front pay, lost health insurance, and lost fringe benefits.

74. As a direct and proximate result of Defendant's actions Plaintiff suffered, continues to suffer, and will in the future suffer, irreparable damages, including, but not limited to, embarrassment, fear, humiliation, stress, and/or other garden variety emotional distress.

75. All of Defendant's actions were done intentionally and willfully.

**COUNT I**
**DISABILITY DISCRIMINATION**
**Mo. Rev. Stat. § 213.010, et seq, Missouri Human Rights Act ("MHRA")**

76. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

77. Defendant, as a person engaged in an industry affecting commerce who has six or more employees for each working day in each of twenty or more weeks in the current or preceding calendar year, is an employer pursuant to the MHRA. Mo. Rev. Stat. § 213.010(8).

78. Plaintiff's disability, as a physical or mental impairment which substantially limits one or more of a person's major life activities, which with or without reasonable accommodation does not interfere with performing the job, is a disability pursuant to the MHRA. § 213.010(5).

79. Unlawful discrimination under the MHRA includes discharging or otherwise discriminating against any individual with respect to his or her compensation, terms, condition, or privileges of employment because of that person's disability. § 213.055.

80. Plaintiff experienced disability discrimination from Defendant.

81. Plaintiff reported her disability and need for accommodation to one or more managers and/or supervisors of Defendant.

82. Defendant treated Plaintiff worse than her similarly situated coworkers that were not disabled.

83. Defendant refused to offer accommodation to Plaintiff, despite such requested accommodation causing no undue burden to the Defendant.

84. Upon information and belief, none of Defendant's non-disabled employees were subjected to such discriminatory behavior.

85. Defendant retaliated against Plaintiff for requesting accommodation for her disability.

86. On or about October 2025, Defendant began monitoring Plaintiff's personal bank data that was generated as a customer of the bank, and impermissibly used it to track her spending.

87. Defendant did not do this to other non-disabled employees or employees not seeking accommodation for disabilities.

88. On or about December 2025, Defendant refused to allow Plaintiff an accommodation for her disability when similarly situated non-disabled employees were granted the same privileges of employment.

89. Plaintiff was then terminated for her legally protected absences taken for her disability.

90. Defendant terminated Plaintiff because of her disability and because she requested reasonable accommodation to create equality within the workplace.

91. Defendant terminated Plaintiff because she did not agree to forego any and all accommodation without any explanation or reason.

92. Prior to seeking accommodation for her disability, Plaintiff engaged in no conduct to give rise to termination.

93. Plaintiff committed no act or omission between the date of requesting accommodation and the date of her termination that would give legitimate cause to terminate Plaintiff.

94. Defendant's refusal to accommodate Plaintiff was a discriminatory adverse employment action.

95. Defendant's blatant invasion of Plaintiff's privacy in her capacity as a customer of Defendant to attempt to generate a subtextual reason to terminate Plaintiff because of her disability is an adverse employment actions.

96. Defendant's termination of Plaintiff's employment was an adverse employment action.

97. Defendant's actions were deliberate, willful, wanton, and malicious.

98. Plaintiff's disability was a motivating factor for Defendant's adverse actions against Plaintiff, including but not limited to, the termination of Plaintiff's employment.

99. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

100. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered – and continues to suffer – garden variety emotional distress and other related compensatory damages.

101. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiff Bonita Alexis Dean, prays that this Honorable Court enter a judgment against Defendant for damages and attorney's fees in an amount to be determined at trial but exceeding Twenty-Five Thousand dollars ($25,000.00), court costs, and for any other further relief as the court may deem just and proper.

## COUNT II
## RETALIATION
## Mo. Rev. Stat. § 213.010, et seq, Missouri Human Rights Act ("MHRA")

102. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

103. Defendant, as a person engaged in an industry affecting commerce who has six or more employees for each working day in each of twenty or more weeks in the current or preceding calendar year, is an employer pursuant to the MHRA. Mo. Rev. Stat. § 213.010(8).

104. Plaintiff's disability, as a physical or mental impairment which substantially limits one or more of a person's major life activities, which with or without reasonable accommodation does not interfere with performing the job, is a disability pursuant to the MHRA. § 213.010(5).

105. Unlawful discrimination under the MHRA includes retaliating or discriminating in any manner against any other person because such person has opposed any practice prohibited by the MHRA or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing. § 213.070(2).

106. Plaintiff experienced disability discrimination from Defendant.

107. Plaintiff reported her disability and need for accommodation to one or more managers and/or supervisors of Defendant.

108. Plaintiff's request for reasonable accommodation was an action taken in pursuit of her legal and protected entitlements.

109. Defendant failed to adequately address or remedy its discriminatory behavior in refusing to accommodate Plaintiff, despite Plaintiff's several requests.

110. Instead, Defendant escalated its negative treatment of Plaintiff due to her reporting requesting accommodation.

111. Defendant began using data it compiled on Plaintiff as a customer to launch a bizarre and invasive monitoring campaign against Plaintiff out of further retaliation.

112. Defendant terminated Plaintiff's employment out of further retaliation.

113. Defendant terminated Plaintiff in retaliation for her engaging in protected acts.

114. Defendant terminated Plaintiff because she did not agree to forego any and all accommodation without any explanation or reason.

115. Prior to seeking accommodation for her disability and complaining of the disability discrimination and failure to accommodate her, Plaintiff engaged in no conduct to give rise to termination.

116. Plaintiff committed no act or omission between the date of requesting accommodation, reporting the disability discrimination, and the date of her termination that would give legitimate cause to terminate Plaintiff. Defendant's refusal to accommodate Plaintiff was an adverse employment action.

117. Defendant's invasion into Plaintiff's personal information to generate a reason to discipline her was an adverse employment actions.

118. Defendant's termination of Plaintiff's employment was an adverse employment action.

119. Defendant's actions were deliberate, willful, wanton, and malicious.

120. Plaintiff's choice to engage in a protected act by and through disclosing her disability and requesting reasonable accommodations for her disability was a motivating factor for Defendant's adverse actions against Plaintiff, including, but not limited to, the termination of Plaintiff's employment.

121. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

122. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered – and continues to suffer – garden variety emotional distress and other related compensatory damages.

123. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiff Alexis Bonita Dean prays that this Honorable Court enter a judgment against Defendant for damages and attorney's fees in an amount to be determined at trial but exceeding Twenty-Five Thousand dollars ($25,000.00), court costs, and for any other further relief as the court may deem just and proper.

## COUNT III
## FAILURE TO ACCOMMODATE
## 42 U.S.C. § 12111, et al, Americans With Disabilities Act ("ADA")

124. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

125. A disability with respect to an individual includes a physical or mental impairment that substantially limits one or more major life activities of such individual and does not exclude impairments that are episodic so long as it substantially limits a major life activity when active. 24 U.S.C. § 12102(1), 12102(4).

126. Plaintiff's disability causes major bodily systems, like her gastrointestinal system, to be substantially impaired.

127. Plaintiff thus has a disability under the ADA.

128. An employer is a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. § 12111(5).

129. The ADA defines an employee as an individual employed by an employer. § 12111(4).

130. Defendant is engaged in an industry impacting interstate commerce and has an excess of 15 employees for each working day in each of 20 or more calendar weeks in the current and preceding year, making it an employer under the ADA.

131. As at all times relevant, Plaintiff was an individual working for Defendant, and therefore Plaintiff was an employee under the ADA.

132. The ADA defines a qualified individual as an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. § 12111(8).

133. A reasonable accommodation can include job restructuring, modified work schedules, appropriate adjustments or modifications of training materials and policies, or other similar accommodations. § 12111(9).

134. An undue hardship requires a showing of significant difficulty or expense to the entity and facility. § 12111(10).

135. No covered entity shall discriminate against a qualified individual on the basis of disability in regard to several factors, including the discharge of employees, employee compensation, job training, and other terms conditions, and privileges of employment. § 12112.

136. Discrimination against a qualified individual includes, amongst other actions, excluding or otherwise denying equal jobs or benefits because of the disability and not making reasonable accommodations to the known mental limitations of an otherwise qualified individual with a disability who is an employee unless such accommodation imposes an undue hardship. § 12112.

137. Plaintiff's disability did not interfere with her performance of employment with or without reasonable accommodation.

138. Plaintiff requested reasonable accommodation from Defendant.

139. Plaintiff's request for accommodation was reasonable and could have been made by Defendant without incurring significant undue hardship, burden, or cost.

140. Defendant refused to provide accommodation to Plaintiff.

141. Defendant denied Plaintiff's request for accommodation without making any reasonable effort to engage in any interactive process to explore other available accommodation.

142. After requesting accommodation, Defendant continued to retaliate against Plaintiff.

143. Defendant ultimately terminated Plaintiff.

144. Defendant's actions, including but not limited to, its termination of Plaintiff's employment was an adverse employment action, as defined by the ADA.

145. Defendant's refusal to accommodate Plaintiff was further discrimination against Plaintiff and resulted in her termination.

146. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income and lost other monetary and non-monetary benefits as a result of being terminated by Defendant.

147. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered – and continues to suffer – garden variety emotional distress and other related compensatory damages.

148. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant pursuant to the ADA.

WHEREFORE, Plaintiff Alexis Bonita Dean prays that this Honorable Court enter a judgment against Defendant for damages and attorney's fees in an amount to be determined at trial

but exceeding Twenty-Five Thousand dollars ($25,000.00), court costs, and for any other further relief as the court may deem just and proper.

**COUNT IV**
**RETALIATION**
**42 U.S.C. § 12203, ADA**

149. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

150. It is unlawful to interfere with an individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, any rights granted or protected by the ADA. § 12203(b).

151. For all times relevant herein, Defendant was aware that Plaintiff was a disabled individual and a qualified individual under the ADA.

152. During her employment, Plaintiff requested accommodation for her disabilities.

153. Defendant intentionally acted to prevent Plaintiff from utilizing her accommodation.

154. Defendant refused to accommodate Plaintiff, despite offering that same accommodation to several similarly situated non-disabled individuals.

155. Defendant retaliated against Plaintiff for requesting accommodation.

156. Defendant terminated Plaintiff's employment out of retaliation for her request for accommodation and for seeking to be able to use an accommodation for her disability.

157. Defendant engaged in unlawful interference with Plaintiff's right to exercise her rights under the ADA, including being accommodated and being free of disability discrimination.

158. Defendant's unlawful employment practice of terminating Plaintiff was intentional and with total disregard to the rights of Plaintiff, and others.

159. Defendant's unlawful employment practices of terminating Plaintiff were done with malice and/or reckless indifference to Plaintiff's protected rights.

160. As a direct and proximate result of Defendant's violations of the ADA, Plaintiff has been deprived of income, as well as the loss of other monetary and non-monetary benefits.

161. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered – and continues to suffer – garden variety emotional distress and other related damages.

162. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided by the ADA.

WHEREFORE, Plaintiff Alexis Bonita Dean prays that this Honorable Court enter a judgment against Defendant for damages and attorney's fees in an amount to be determined at trial but exceeding Twenty-Five Thousand dollars ($25,000.00), court costs, and for any other further relief as the court may deem just and proper.

**COUNT V**
**FMLA INTERFERENCE**
**29 U.S.C § 2601, et seq, Family Medical Leave Act ("FMLA")**

163. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

164. An eligible employer under FMLA includes any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year. 29 U.S.C. § 2611(4).

165. For all times relevant herein, Defendant employed more than fifty (50) employees engaged in commerce or activity affecting commerce in twenty (20) or more calendar weeks during Plaintiff's employment and is an eligible employer under FMLA.

166. An eligible employee under FMLA includes any employee who has been employed for at least 12 months by the employer and who has been employed by the employer for at least 1,250 hours of service during the preceding 12-month period and when there are at least 50 employees of the employer within seventy five miles of that worksite. § 2611(2).

167. Prior to taking FMLA, Plaintiff worked at least 1,250 hours for Defendant during the rolling 12-month period immediately preceding requesting FMLA. These 1,250 hours were worked in an office or worksite at which 50 or more employees were employed within seventy-five (75) miles.

168. A serious health condition under FMLA includes a mental condition that involves continuing treatment by a health care provider. § 2611(11).

169. An employee is entitled to FMLA leave because of a serious health condition that makes the employee unable to perform the functions of the position of such employee. § 2612(a).

170. An eligible employee may use up to twelve work weeks of leave during any twelve-month period. § 2612(a).

171. Plaintiff's disability, including Celiac Disease and Thyroid Toxicosis, are serious health conditions that severely impact Plaintiff's bodily functioning and for which she was receiving continuing treatment from a health care provider, making these serious health conditions.

172. Plaintiff's symptoms from her disability are often episodic in nature such that her symptoms will vary from mild to severe depending on various circumstances and factors.

173. Therefore, for all times relevant herein, Plaintiff was an eligible employee under the FMLA and entitled to FMLA leave for her serious health condition.

174. Plaintiff requested and provided all necessary certifications for the use of FMLA leave when initially seeking FMLA leave.

175. At the time of her initial application for FMLA leave, Defendant approved intermittent FMLA leave for Plaintiff.

176. Defendant quickly became disgruntled with Plaintiff for using her intermittent FMLA leave that it had approved.

177. Defendant began to scrutinize Plaintiff for her intermittent leave, yet would reprimand Plaintiff for working with symptoms of her disability.

178. Defendant then began acting as if Plaintiff did not require the use of intermittent FMLA leave.

179. Defendant required Plaintiff to seek additional proof of her need for intermittent FMLA leave, despite having several weeks left of available and approved leave.

180. This is interference with her rights under FMLA.

181. Defendant consistently attempted to make Plaintiff feel guilty for using her intermittent FMLA leave by referring to her legally entitled leave as “absences” that made her less reliable.

182. This is further interference with Plaintiff’s rights under FMLA.

183. Defendant’s interference with Plaintiff’s FMLA leave was in direct violation of 29 U.S.C. § 2615, which prohibits any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise the use of FMLA.

184. As a direct and proximate result of Defendants' FMLA interference, Plaintiff has incurred past loss of benefits and wages, will continues to incur a loss of benefits, and will incur a loss of benefits in the future.

185. Plaintiff is entitled to reasonable attorney's fees and costs incurred in pursuit of this action pursuant to FMLA.

WHEREFORE, Plaintiff Alexis Bonita Dean prays that this Honorable Court enter a judgment against Defendant for damages and attorney's fees in an amount to be determined at trial but exceeding Twenty-Five Thousand dollars ($25,000.00), court costs, and for any other further relief as the court may deem just and proper.

**COUNT VI**
**FMLA RETALIATION**
**29 U.S.C § 2601, et seq, Family Medical Leave Act ("FMLA")**

186. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

187. As outlined in Count V, Plaintiff was a qualified employee under FMLA and Defendant was a covered employer under FMLA.

188. As outlined in Count V, Plaintiff requested and was entitled to the use of FMLA leave for her serious health conditions including Celiac Disease and Thyroid Toxicosis.

189. Plaintiff's right to take FMLA leave was statutorily protected.

190. Defendant was aware that Plaintiff took FMLA leave and that she was eligible and entitled to take FMLA leave.

191. Despite being eligible and entitled to take FMLA leave, Defendants engaged in actions that contradicted Plaintiff's statutory rights and/or interrupted her use of FMLA leave.

192. After Plaintiff sought to use her FMLA leave, Defendant illegally accessed her personal banking data without any legitimate reason other than to subject Plaintiff to intense scrutinization it did not engage in with similarly situated employers who did not seek FMLA leave.

193. After Plaintiff sought to continue using her FMLA leave, Defendant terminated Plaintiff.

194. Plaintiff was terminated because Plaintiff used the FMLA leave she was legally entitled to use.

195. No good cause or legal justification existed to terminate Plaintiff.

196. Plaintiff's termination was in retaliation for using FMLA leave as Defendant viewed her legally protected absences as unacceptable.

197. Defendants' termination of Plaintiff was in direct violation of 29 U.S.C. § 2615 which prohibits such retaliatory conduct.

198. As a direct and proximate result of Defendant's FMLA retaliation, Plaintiff has incurred past loss of benefits and wages, continues to incur a loss of benefits, and will incur a loss of benefits in the future.

199. Plaintiff is entitled to reasonable attorneys fees and costs incurred in pursuit of this action pursuant to FMLA.

WHEREFORE, Plaintiff Alexis Bonita Dean prays that this Honorable Court enter a judgment against Defendant for damages and attorney's fees in an amount to be determined at trial but exceeding Twenty-Five Thousand dollars ($25,000.00), court costs, and for any other further relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

200. Plaintiff demands a trial by jury on all counts so triable.

Dated: August 17, 2026

Respectfully submitted,

**SPARKS LAW FIRM**

By: /s/ Samantha Sparks

Samantha J. Sparks, #72058
2025 Zumbehl Road, #102
St. Charles, MO 63303
P: (636) 373-9375
F: (314) 451-2567
sam@sparks-legal.com

*Counsel for Plaintiff*